UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


NATHANIEL MILLER

      Petitioner,

v.                                                                    Case No. 8:08-cv-814-T-23TBM

SECRETARY, Department of Corrections,

      Respondent.

_____/

## **O R D E R**

    Nathaniel Miller petitions for the writ of habeas corpus pursuant to 28 U.S.C.

§ 2254 (Doc. 1) and challenges the validity of his state conviction for

burglary.  Miller alleges several claims of ineffective assistance of trial counsel.

Numerous exhibits ("Respondent's Exhibit __") support the response.  (Doc. 6)

## **FACTS**[1]

    Shannon Peek was awakened by the sound of breaking glass in her

apartment.  She called 911 and hid in her closet.  While hiding she saw a man enter

through her bedroom window and heard a male voice repeatedly say, "Where are you

at?"  Peek recognized the man's voice as that of Miller, her former fiancé.  Miller said

that he had come to kill Peek, Alphonso Watson (her son), and David Hill (her

boyfriend).  Watson saw Miller in the hallway and heard Miller announce his intention

---

[1] This summary of facts derives from Miller's appellate brief.  (Respondent's Exhibit 1)

to "shoot up" the apartment and kill the occupants.  When the police arrived they saw

Miller fleeing from the corner of the apartment building.  The police ultimately arrested

Miller and a jury found him guilty of burglary.[2]

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), governs

this proceeding.  Wilcox v. Florida Dep't of Corrections, 158 F.3d 1209, 1210 (11th

Cir. 1998), cert. denied, 531 U.S. 840 (2000).  Section 2254(d), which creates a

highly deferential standard for federal court review of state court adjudications, states

in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be granted
> with respect to any claim that was adjudicated on the merits in State
> court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved
> > an unreasonable application of, clearly established
> > Federal law, as determined by the Supreme Court of the
> > United States; or
> >
> > (2) resulted in a decision that was based on an
> > unreasonable determination of the facts in light of the
> > evidence presented in the State court proceeding.

In Williams v. Taylor, 529 U.S. 362, 412-13 (2000), the Supreme Court

interpreted this deferential standard:

---

[2] An information charged Miller with armed burglary of a dwelling, two counts of criminal
mischief, and aggravated assault.  The prosecutor nolle prossed both the aggravated assault charge
and one count of criminal mischief.  The trial judge granted Miller's motion for judgment of acquittal on
the remaining criminal mischief charge.  Instead of armed burglary of a dwelling, a jury convicted Miller
of the lesser-included offense of burglary of a dwelling.

In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied--the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." Bell v. Cone, 535 U.S. 685, 694 (2002); Brown v. Head, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness per se, of the state court decision that we are to decide.").

In per curiam decisions without a written opinion, the state appellate court affirmed both Miller's conviction and his sentence on direct appeal and affirmed the denial of his subsequent Rule 3.850 motion to vacate.  The state appellate court's per curiam affirmances warrant deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." Wright v. Moore, 278 F.3d 1245, 1254 (11th Cir.), reh'g and reh'g en banc denied, 278 F.3d 1245 (2002), cert. denied sub nom Wright v. Crosby, 538 U.S. 906 (2003).

Miller bears the burden of overcoming a state court factual determination by clear and convincing evidence.  "[A] determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).  This presumption of correctness applies only to a finding of fact, not a mixed determination of law and fact.  Parker v. Head, 244 F.3d 831, 836 (11th Cir.), cert. denied, 534 U.S. 1046 (2001).  Consequently, this court must defer to the finding of fact in the state court's rejection of Miller's post-conviction claims.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Miller claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between."  Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (quoting Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994)).  Strickland v. Washington, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented.  In Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims.  According to Strickland, first, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Strickland, 466 U.S. at 687, 104 S. Ct. 2052.

Sims v. Singletary, 155 F.3d 1297, 1305 (11th Cir. 1998).

Strickland requires proof of both deficient performance and consequent prejudice.  Strickland, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); Sims, 155 F.3d at 1305 ("When applying Strickland, we are free to dispose of ineffectiveness claims on either of its two grounds.").  "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  Strickland, 466 U.S. at 690.  "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  466 U.S. at 690.  Strickland requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."  466 U.S. at 690.

Miller must demonstrate that counsel's error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."  466 U.S. at 691-92.  To meet this burden, Miller must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  466 U.S. at 694.

Strickland cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the

extent that reasonable professional judgments support the limitations on investigation."  466 U.S. at 690-91.  Miller cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done.  Nor is the test even what most good lawyers would have done.  We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . .  We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

White v. Singletary, 972 F.2d 1218, 1220-21 (11th Cir. 1992).  Accord Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious:  the trial lawyers, in every case, could have done something more or something different.  So, omissions are inevitable . . . .  [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (en banc) (quoting Burger v. Kemp, 483 U.S. 776, 794 (1987)).  See also Jones v. Barnes, 463 U.S. 745, 751 (1983) (counsel has no duty to raise a frivolous claim).

**Ground One**

Miller contends that trial counsel rendered ineffective assistance by failing to subpoena William Byrd.  Miller claims that Byrd would have supported Miller's alibi theory and that Byrd's testimony "might have affected the jury's comparison to the contradicted testimony of [the] somewhat questionable victim's testimony."  The state post-conviction court rejected this claim in Miller's Rule 3.850 motion after an evidentiary hearing:

> In ground one of his [Rule 3.850] Motion, Defendant alleges ineffective assistance of counsel.  Specifically, Defendant alleges that counsel failed to subpoena alibi witness Willie Byrd.  Defendant further alleges

that Willie Byrd would have testified that Defendant was with him the night the offense occurred.

At the evidentiary hearing, counsel testified that Defendant never provided him with Willie Byrd's address, phone number, or any other information that would assist him in contacting this witness. Counsel further testified that it was his strategic decision not to go forward with an affirmative alibi defense as it was not a viable strategy.

Based upon this testimony presented at the evidentiary hearing, the Court finds the testimony presented by defense counsel to be highly credible. Smith v. State, 697 So. 2d 991, 992 (Fla. 4th DCA 1997) (stating that following an evidentiary hearing, the finder of fact can rely upon testimony it finds to be credible). Furthermore, "counsel's strategic decisions will not be second-guessed on collateral attack." Johnson v. State, 769 So. 2d 990, 1001 (Fla. 2000). Moreover, "[s]trategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct." Occhicone v. State, 768 So. 2d 1037, 1048 (Fla. 2000). The Court finds that counsel's attempts to locate Willie Byrd were unsuccessful, and further, that he strategically chose not to use Willie Byrd as an alibi witness. Therefore, the Defendant has failed to show that counsel's performance was deficient or that he was prejudiced. As such, the Defendant is not entitled to relief on ground one of his Motion for Postconviction Relief.

(Respondent's Exhibit 14, pp. 2-3) (footnote and court's record citations omitted).

Miller testified at the evidentiary hearing that he provided trial counsel with Byrd's address and phone number.[3]  (Respondent's Exhibit 12, pp. 7-8)  Trial counsel testified on cross-examination that Miller told him about Byrd but provided no information about how to contact Byrd:

---

[3]  Post-conviction counsel advised the judge at the beginning of the Rule 3.850 evidentiary hearing that he could not locate Byrd to testify at the hearing.  (Respondent's Exhibit 12, p. 4)  The judge proceeded with the evidentiary hearing but allowed counsel additional time to locate Byrd.  At a subsequent status conference, post-conviction counsel advised the judge that he had not received any additional information on Byrd.  The judge resolved the ineffective assistance claim using the testimony from the evidentiary hearing.  (Respondent's Exhibit 13, p. 4)

Q:    Well, let's talk about Willie Bird.[4]  Mr. Miller did tell you about
      Willie Bird, his alibi witness; correct?

A:    Yes, he did tell me.

. . .

A:    I said [in case file notes], on 5/8/03, met with the Defendant.
      Defendant is in custody in court for arraignment.  Defendant was
      not at crime scene at the time of the crime.  Alibi witnesses,
      colon, that Defendant was at the house of, colon, Willie Bird, and
      Willie's sister, address unknown, someplace in Tampa.  No
      phone number.  Last notation.  Defendant will get information
      ASAP for me.

. . .

Q:    Okay.  Did you ever follow up with Mr. Miller to find out anymore
      information - -

A:    Yes.

Q:     - - about Mr. Bird?

A:    Yes.

. . .

Q:    Do your notes reflect that you ever asked Mr. Miller, "Do you
      have anymore information for me about Willie Bird?"

A:    Yes.

Q:    They do?

A:    By omission they did.

Q:    What?

A:    By omission.

---

[4]  Miller in his petition spells the witness's name "Byrd."

Q:      I'm asking you what's in your notes; not what's not in your notes.
        Do your notes reflect that you asked Mr. Miller if he had any
        information about Willie Bird?

A:      Yes.  I - - I can tell that by the fact of the detailed notes I took
        about our defense and the fact that I do not have any - - I have
        made a decision in my notes not to follow up with affirmative alibi
        witnesses.  The alibi would be presented by him and him alone, if
        he did choose to testify at trial.

Q:      Is - - is that a quote from your notes?

A:      Like I say, by omission, it is.

Q:      Okay.  So there is nothing in your notes that indicate that you
        ever asked Mr. Miller, "What about Willie Bird?

A:      Well, it says.  Defendant only knows David Hill - - remember
        that's the other fellow that's there - - Defendant only knows David
        Hill, black male, from when he came to the restaurant to visit
        Sharon [sic].[5]  Five - - here's where we get to the alibi - - 5221
        Matador Court, Number 5, is the location of the incident per the
        Criminal Report Affidavit, and the Defendant says to me, he used
        to stay there with Sha[nnon] when they were dating.  It is
        Sha[nnon]'s place but [the] Defendant wasn't there on [the] date
        of [the] offense.  State still hasn't provided police reports or
        discovery despite [that] I demanded them . . . and then I go on,
        Sha[nnon] - - the interview with Defendant, Sha[nnon] Peak [sic].
        Is Defendant's ex-fiancé.  Defendant says he is completely
        innocent and knows nothing about these facts . . . . The
        Defendant only knows about some other incident they had at a
        restaurant and - - and - - and that's what I mean, by omission,
        then, I don't - - I'm following up on when he gave me David
        Bird's - - Willie Bird's address - - name, and at this juncture . . . .

Q:      Well, how can you say that you're following up when there's
        nothing in your notes that you ever mentioned Willie Bird - -

A:      That's the whole point of me going to the jail . . . . I went out to
        the jail and I camped out with him.

---

[5]  The victim's name is Shannon Peek.

Q:    I realize that the whole - - [counsel], I realize that's the whole point.  Let's - - I - - it's just a simple yes or no question.  On that particular jail visit that you were just looking at - -

A:    Yes.

Q:    - - is there any mention at all in your notes of the name, Willie Bird?

A:    By omission.  It's not there.  No, there isn't.

Q:    Is that a no?  Okay.  Thank you.

A:    Okay.

Q:    All right.  Did you ever - - is there any indication in your file that you ever asked an investigator to go out and visit Mr. Miller and inquire about Willie Bird?

A:    I wouldn't, though, because . . . I determined that we weren't going to provide an affirmative defense.  It wasn't viable so that's when I - - I - -

Q;    Well, how did you determine that?

A:    Because I went . . . to follow up on my meeting at arraignment with him and the name that he was going to be providing to me, the address about which, Willie Bird, Willie Bird's sister and a phone number and an address or something, so I go to the jail . . . . I review the CRA because that's all I had at the time and I - - I focus on the time and the date of the incident.  I determine with him, the client, that we don't have Willie Bird or Willie Bird's sister - -

Q:    Well, that's - - but that's not in your notes, is it?

A:    By omission it is, but if you want to get technical, are the words there?  I did not write [sic].

Q:    Okay.

A:    Explicitly - -

Q:    So there's nothing in your notes to indicate then that you talked to Mr. Miller about Willie Bird?  So basically what happened is

this, Mr. Miller never brought Willie Bird up to you again so you just let it go?

A:     No.  That's - -

Q:     That's not it?

A:     That's completely false.  That doesn't make any sense.  The whole - -

Q:     Well, I realize it doesn't make any sense but it sounds like that's what happened.

A:     The only - -

Q:     Regardless - - regardless of that, there's - - there's nothing in your notes to indicate that you talked to Willie Bird [sic] about that on that jail visit?

A:     That's the whole reason why I went.

Q:     Now - -

A:     No, I disagree with you on that.  If I can answer the question[?]

Q:     Okay.

A:     The whole reason why I went to the jail . . . was because I had met the gentleman . . . and he told me that he had an alibi here and that he was completely innocent, so I went to the jail to get a development, the most I could, on the alibi.  At that meeting, it was determined by me after interviewing him that we did not have any ability of a witness to recall the specific time and date as an alibi so that's when we dropped it; however, I took notes that we still had an alibi defense because he never remembered any incident of going back there with a golf club and that David Hill was there, so it was an alibi defense without witnesses.

Q:     But there again, there is nothing in your notes to reflect that it was ever discussed with Mr. Miller about whether Willie Bird could testify to anything?

A:     Well, I just want to disagree.  We can go on this all day.  By omission - -

- 11 -

Court:  I understand.  I understand.

A:      - - it reflects that.

Q:      And again, you did not send an investigator to talk to Mr. Miller about Willie Bird?

A:      I went personally.  I like to do my work myself.

. . .

A:      I went personally and that's how I determined there was no Willie Bird to call or Willie's sister to call.  That was the whole point. The only information I had before I went to visit him to develop a defense was that he wasn't there and that Willie Bird and Willie's sister could possibly, with [an] unknown address, with [an] unknown phone number, back him up, so that was - - that was the only information I had to go visit him with for whatever, an hour-and-a-half, whatever it was.

(Respondent's Exhibit 12, pp. 27-34).

Trial counsel testified on redirect examination:

Q:      And the - - regarding the issue of Mr. Bird, there was no indication; you'd never had any other information; an address, a phone number, any other information at all to try to contact Mr. Bird?

A:      Oh, no.  I concluded . . . after th[e] jail visit, that we were foregoing any affirmative alibi defense other than potentially his own testimony and several other issues came up; the court had a Nelson hearing at the pretrial six days before the trial and that issue never came up about Mr. Bird, his sister, or about the competency of the victim.

Q:      In effect, Mr. Bird never tried to contact you or call you?

A:      No.

(Respondent's Exhibit 12, p. 36).

In assessing a lawyer's performance, "[c]ourts must 'indulge [the] strong

presumption' that counsel's performance was reasonable and that counsel made all

significant decisions in the exercise of reasonable professional judgment.'" <u>Chandler</u> <u>v. United States</u>, 218 F.3d at 1314.  "The inquiry into whether a lawyer has provided effective assistance is an objective one:  a petitioner must establish that no objectively competent lawyer would have taken the action that his lawyer did take." <u>Van Poyck v. Fla. Dept. of Corr.</u>, 290 F.3d 1318, 1322 (11th Cir. 2002).  A habeas petitioner must overcome a presumption that the challenged conduct of one's counsel was a matter of strategy.  <u>Strickland v. Washington</u>, 466 U.S. at 689; <u>United States v. Perry</u>, 908 F.2d 56, 59 (6th Cir. 1990).  A defendant's disagreement with counsel's tactics or strategy will not support a claim of ineffective assistance of counsel.  "Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." <u>Rogers v. Zant</u>, 13 F.3d 384, 386 (11th Cir. 1994).  The reasonableness of counsel's challenged conduct on the facts of the case viewed as of the time of counsel's conduct decides an ineffectiveness claim.  <u>Strickland v. Washington</u>, 466 U.S. at 690.

Miller presents no evidence showing that Byrd would have provided credible testimony as Miller hypothesizes.[6]  Miller fails to support his speculative contention that the jury would have acquitted him if trial counsel had subpoenaed Byrd and called Byrd as a witness at trial.

---

[6]   Miller presents no affidavit from Byrd averring the facts that Miller speculatively asserts would have supported his alibi defense.  <u>See</u> <u>United States v. Ashimi</u>, 932 F.2d 643, 650 (7th Cir. 1991) ("[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or an affidavit.  A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim.") (footnotes omitted).

Miller also fails to demonstrate that trial counsel's approach was anything other than trial strategy.  In denying relief on this ineffective assistance claim, the state post-conviction court found counsel's testimony more credible than Miller's testimony.  The state trial court's credibility determination is presumed correct.  See Baldwin v. Johnson, 152 F.3d 1304, 1316 (11th Cir. 1998) ("We must accept the state court's credibility determination and thus credit [the attorney's] testimony over" the petitioner's.), cert. denied, 526 U.S. 1047 (1999); Devier v. Zant, 3 F.3d 1445, 1456 (11th Cir. 1993) ("Findings by the state court concerning historical facts and assessments of witness credibility are . . . entitled to the same presumption accorded findings of fact under 28 U.S.C. § 2254(d)."), cert. denied, 513 U.S. 1161 (1995). Relying only upon his unsupported contention, Miller fails to overcome the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  Miller fails to meet his burden of proving that the state court unreasonably applied Strickland or unreasonably determined the facts in rejecting this claim.  28 U.S.C. § 2254(d).

**Ground Two**

Miller contends that trial counsel rendered ineffective assistance by failing to impeach Peek with a prior inconsistent statement.  He argues that Peek told a police officer that she saw Miller come through her bedroom window with a golf club, swinging the club, and breaking things.  Miller alleges that Peek testified to the contrary at trial and that counsel failed to draw the jury's attention to this inconsistency.  The state post-conviction court rejected this claim in Miller's Rule 3.850 motion without an evidentiary hearing:

- 14 -

In ground two [of the Rule 3.850 motion] Defendant claims that counsel failed to impeach victim Shannon Peek's trial testimony that she saw Defendant with a golf club with her prior statement to police that she was in a closet under three (3) comforters and could not see anything, and that had counsel done so, the outcome of the trial would have been different.

Counsel impeached victim Shannon Peek's testimony through cross-examination of Alfonso Watson, her son, who was also awakened and looked out his bedroom door and saw the Defendant in the hallway and testified:

Q:    [. . .] And why you - you stated when you awoke, you peeked out your door?

A:    Um-hmm.

[. . .]

Q:    Then you looked the other way and you saw <u>who you say is Nathaniel Miller</u>?

A:    Yes.

Q:    Okay.  But the question I'm asking is if you're sleeping in your bed, um, <u>you don't know who came into your apartment while you were sleeping</u>, do you?

A:    <u>No.</u>

Q:    Okay.  Um, and <u>at that time, you didn't see anything in his hands, did you</u>?

A:    <u>No.</u>

Defendant fails to show deficient performance by counsel.  No relief is warranted on [this] ground.

(Respondent's Exhibit 8, Order to Respond to Motion for Postconviction Relief, pp.

3-4) (court's record citation omitted) (emphasis in original).

Miller points to the following excerpt of Peek's testimony on direct examination to support his claim:

Q:    Okay.  When you saw Nathaniel Miller enter your bedroom, did he have anything in his hand?

A:    Yes, he did.

Q:    What did he have in his hand?

A:    He had a golf stick.

Q:    And he was swinging - -

Court:  What - - what did you say?  What?

A:    A golf stick.  A golf club.

Q:    Okay.  Was he doing anything with this golf club?

A:    Yes, he was swinging it.

. . .

Q:    Um, why don't you go ahead and walk me through it.  After - - after that happened, what did he do?

A:    After I seen [sic] [Miller hit the TV/DVD player with the golf club, um, I was, um, still hiding in the closet.  And I could see him but he couldn't see me.

. . .

Q:    And where was your son at this time?

A:    He was in the bedroom.

Q:    His own bedroom?

A:    Yes.

- 16 -

(Doc. 1, pp. 13-14; Respondent's Exhibit 19, Vol. I, pp. 100-01).  Contrary to Miller's

assertion, this testimony appears consistent with what Miller claims Peek told the

police.[7]

Despite Miller's contention, the record shows that trial counsel questioned

Peek on cross-examination about her ability to perceive Miller:

> Q:    . . . So if I'm . . . in the bedroom, and you're in the closet, I can't
> see you in the closet, obviously, you're down - - down in a little
> corner to the right side on the other side of walls and then in the
> closet, right?
>
> A:    Yes.
>
> Q:    Thank you.  And so if you're in the closet - - the walk-in closet
> without a door over here by . . . the bathroom, there ain't no way
> you could tell what's going on over there in the bedroom, is
> there?
>
> A:    No.

(Respondent's Exhibit 19, Vol. I, pp. 112-13).

Miller fails to present evidence showing that Peek's trial testimony was

inconsistent with her statement to the police.  Even assuming an inconsistency, Miller

fails to overcome the presumption that trial counsel's decision not to question Peek

about her prior statement was anything other than trial strategy.  Strickland v.

Washington, 466 U.S. at 689; United States v. Perry, 908 F.2d at 59.  Trial counsel

must decide which strategic and tactical option to pursue.  See e.g., Dingle v. Sec'y,

Dep't of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007) ("Even if counsel's decision . . .

appears to have been unwise in retrospect, the decision will be held to have been

---

[7]  Neither the record nor Miller's petition includes a copy of the police report.

ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'").  Miller fails to support his speculative contention that impeaching Peek with her prior statement would have resulted in his acquittal. Based on Miller's bare allegations, the state court's rejection of this claim amounts to neither an unreasonable application of Strickland nor an unreasonable determination of the facts.  See 28 U.S.C. § 2254(d)(1), (2).

**Ground Three**

Miller contends that trial counsel rendered ineffective assistance by failing to impeach Alfonso Watson (Peek's son) with a prior inconsistent statement.  Miller argues that Watson told a police officer that he saw Miller in Peek's bedroom but at trial testified that he saw Miller in the hallway.  The state post-conviction court rejected this claim in Miller's Rule 3.850 motion without an evidentiary hearing:

> In ground three [of his Rule 3.850 motion] Defendant claims that counsel failed to impeach victim Alphonso [sic] Watson's testimony that he saw Defendant in the hallway with the prior statement Watson made to police that he saw the Defendant in his mother's room, and that had counsel done so, the outcome of the trial would have been different.
>
> Counsel impeached victim Watson's testimony through effective cross examination.  Defendant fails to show deficient performance by counsel. No relief is warranted on [this] ground.

(Respondent's Exhibit 8, Order to Respond to Motion for Postconviction Relief, pp. 4-5) (court's record citations omitted).

Counsel questioned Watson on cross-examination:

Q:   Okay.  When you went to sleep, um, Nathaniel Miller was not in your apartment; is that correct?

A:   No.

- 18 -

Q:     So you don't know if Nathaniel Miller came in your apartment while you were sleeping, do you?

A:     Yes.

Q:     How can you as a witness state that you know that he came into your apartment while you were sleeping?

A:     Because I saw him.

Q:     You saw him in your apartment?

A:     Yes.

Q:     Is that - - is that what you're testifying to?

A:     Yes.

Q:     Correct?

A:     Yes.

Q:     But you were sleeping and then you saw him in your apartment?

A:     When I woke up.

Q:     But you don't know if he came into your apartment while you were sleeping, do you?

A:     Hmm?

Q:     You stated today - - you're telling this jury that you were asleep in your bedroom, correct?

A:     Yes.

Q:     Okay.  And why you - - you stated when you awoke, you peeked out your door?

A:     Um-hmm.

Q:     There is a guy saying, "I'm going to kill everybody," but you're still peeking out your door, right?

A:     Yes.

Q:      Okay.  And you're saying that person that you saw - - first person
        you saw was, um, David Hill?

A:      Um-hmm.

Q:      Your Mom's then-boyfriend?

A:      Yes.

Q:      Then you looked the other way and you saw who you say is
        Nathaniel Miller?

A:      Yes.

Q:      Okay.  But the question I'm asking is if you're sleeping in your
        bed, um, you don't know who came into your apartment while
        you were sleeping, do you?

A:      No.

Q:      Okay.  Um, and at that time, you didn't see anything in his hands,
        did you?

A:      No.

(Respondent's Exhibit 19, Vol. I, pp. 121-23).

Miller again fails to present evidence showing an inconsistency between

Watson's trial testimony and his statement to the police.  Even assuming an

inconsistency, Miller fails to show that if the jury had heard that Watson saw Miller in

the hallway rather than his mother's bedroom, the jury would have acquitted Miller.

The state court's rejection of this claim amounts to neither an unreasonable

application of Strickland nor an unreasonable determination of the facts.  See 28

U.S.C. § 2254(d)(1), (2).

Accordingly, Miller's petition for the writ of habeas corpus (Doc. 1) is **DENIED**.

The clerk shall enter a judgment against Miller and close this action.

ORDERED in Tampa, Florida, on February 2, 2011.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE